Jeremy J. Taylor (SBN 249075)
Email: jeremy.taylor@bakerbotts.com
**BAKER BOTTS L.L.P.**
101 California Street, Suite 3200
San Francisco, CA 94111
Telephone: (415) 291-6264

Kurt Pankratz (*Pro Hac Vice Forthcoming*)
kurt.pankratz@bakerbotts.com
2001 Ross Avenue, Suite 900
Dallas, TX 75201
(214) 953-6500

Lauren J. Dreyer (*Pro Hac Vice Forthcoming*)
Email: lauren.dreyer@bakerbotts.com
700 K Street, N.W.
Washington, DC 20001
Telephone: (202) 639-7700

*Attorneys for Plaintiff Retail Services & Systems, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RETAIL SERVICES & SYSTEMS, INC., | Case No. 3:25-cv-7780 |
| Plaintiff, | **RETAIL SERVICES & SYSTEMS, INC.'S COMPLAINT FOR DECLARATORY JUDGMENT OF INELIGIBILITY** |
| v. | |
| S3G TECHNOLOGY LLC, | **JURY TRIAL DEMANDED** |
| Defendant. | |

Plaintiff Retail Services & Systems, Inc. ("RSSI") hereby seeks a declaratory judgment against defendant S3G Technology LLC ("S3G") as follows:

**INTRODUCTION**

1. This is an action for a declaratory judgment of ineligibility of U.S. Patent Nos. 9,081,897 (the "'897 Patent"), 9,940,124 (the "'124 Patent"), and 9,304,758 (the "'758 Patent") (the "Declaratory Judgment Patents") under 35 U.S.C. § 101. True and correct copies of the Declaratory Judgment Patents are attached as Exhibits 1-3.

2. RSSI requests declaratory relief because S3G has alleged that RSSI infringes the Declaratory Judgment Patents. On July 7, 2025, S3G filed a complaint against RSSI in the Eastern District of Texas, No. 2:25-cv-689, alleging infringement of at least claim 1 of each of the Declaratory Judgment Patents. A true and correct copy of the complaint filed by S3G is attached as Exhibit 4.

3. RSSI believes the claims of the Declaratory Judgment Patents are ineligible. RSSI also disputes that the Eastern District of Texas is a proper venue for S3G's complaint. S3G's affirmative acts have created a real, immediate, and justiciable controversy between the parties.

4. An actual and justiciable controversy having arisen and existing between the parties, RSSI seeks a judicial declaration that the Declaratory Judgment Patents are ineligible under 35 U.S.C. § 101. The claims are directed to the abstract idea of remotely updating software to change the prompts a user sees on a screen—a long-standing and fundamental practice in computing. The claims do not add any inventive concept to this abstract idea. Instead, they merely recite the use of generic computer components and the conventional architecture of Java-based platforms, technology that the patents' own specification admits was well-known in the art.

5. By claiming these conventional arrangements, the Declaratory Judgment Patents improperly seek to monopolize the essential building blocks of countless mobile applications, threatening to preempt the standard operation of any Android and/or iOS application that updates its user interface. Because the patents attempt to claim a patent-ineligible abstract idea without any inventive transformation, they are ineligible under the Supreme Court's framework in *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208 (2014). A judicial declaration is necessary and appropriate to resolve

the uncertainty this controversy has created and to affirm that these ineligible patents cannot be asserted against RSSI.

## PARTIES

6. Plaintiff Retail Services & Systems, Inc. is a Maryland corporation headquartered in Bethesda, Maryland, with its principal place of business at 6600 Rockledge Drive, Suite 150, Bethesda, Maryland, 20817.

7. Defendant S3G Technologies LLC has alleged that it is a limited liability company organized under the laws of the State of California with its principal place of business in Foster City, California.

8. S3G has alleged that it is the owner of the Declaratory Judgment Patents.

## JURISDICTION AND VENUE

9. This is an action for a declaration under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, that the Declaratory Judgment Patents are ineligible under 35 U.S.C. § 101 and thus unenforceable against RSSI.

10. This Court has subject matter jurisdiction over the claims alleged in this action under 28 U.S.C. §§ 1331, 1332, 1338, 2201, and 2202 because this Court has exclusive jurisdiction over declaratory judgment claims arising under the patent laws of the United States and because RSSI and S3G are citizens of different states and the value in controversy exceeds $75,000.

11. This Court has both personal jurisdiction over S3G under both general and specific jurisdiction principles. S3G is subject to this Court's general jurisdiction because S3G has alleged its principal place of business is in Foster City, California, which is within this District. S3G is subject to this Court's specific jurisdiction because S3G has established sufficient minimum contacts with this forum such that the exercise of jurisdiction over it will not offend traditional notions of fair play and substantial justice. S3G has purposefully directed its activities at this forum by, among other things, developing and enforcing its patent portfolio from its principal place of business within the District.

12. Venue in this District is proper under 28 U.S.C. §§ 1391 and 1400 at least because S3G is subject to personal jurisdiction in this District, resides in this District, and maintains its

principal place of business in this District.

13. An actual and justiciable controversy exists under 28 U.S.C. §§ 2201-2202 between RSSI and S3G as to whether the Declaratory Judgment Patents are ineligible and thus unenforceable for patent infringement claims against RSSI. The controversy is real, immediate, and substantial, as reflected by S3G's Complaint filed in the Eastern District of Texas, No. 2:25-cv-689, alleging infringement of the Declaratory Judgment Patents against RSSI.

**DIVISIONAL ASSIGNMENT**

14. Pursuant to Civil L.R. 3-2(c), 3-5(b), and General Order No. 44, this is an Intellectual Property Action subject to assignment on a district-wide basis.

**FACTUAL BACKGROUND**

15. RSSI provides support services to local retailers that operate under the "Total Wine & More" brand. Among these services, RSSI develops and maintains a mobile application and website that allows customers to interact with local stores. The mobile application is the primary instrumentality accused of infringement in the Texas Action.

16. On information and belief, Defendant S3G does not make or sell any products or services. Instead, its business model focuses on asserting its patent portfolio against operating companies across a wide variety of industries.

17. On July 7, 2025, S3G initiated the Texas Action against RSSI, alleging that the standard operation of the mobile application RSSI provides infringes the Declaratory Judgment Patents.

18. RSSI disputes that venue is proper against RSSI under 28 U.S.C.§ 1400(b) in the Texas Action.

19. The Declaratory Judgment Patents share a related specification and describe a system for modifying software applications that are distributed across a network. The system involves a "terminal machine" (e.g., a mobile device) and a "service provider machine" (e.g., a server).

20. The patents describe a process where a "dialogue module" is sent over the network to the terminal and service provider machines. This module updates a portion of the application referred to as "code," which in turn changes the prompts a user sees. The patents distinguish this

"code" from the application's "computer-executable instructions," which are not modified by the update.

21. The patents' related specification, in the "Description of the Related Art" section, acknowledges that key technological concepts recited in the claims were conventional and well-known prior to the patents' claimed filing date. For example, the specification describes the use of virtual machines and "intermediary code, such as Java Byte Code," as a common way to build applications.

22. S3G's infringement allegations in the Texas Action primarily target functionality of RSSI's mobile application.

**FIRST CLAIM FOR RELIEF**

**(Declaratory Judgment of Ineligibility of U.S. Patent No. 9,081,897)**

23. RSSI repeats and realleges each allegation set forth in the preceding paragraphs as fully set forth herein.

24. The '897 Patent and each of its claims are invalid for failing to claim patent-eligible subject matter under 35 U.S.C. § 101. The claims fail the two-part test for patent eligibility established by the Supreme Court in *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208 (2014).

25. At step one of the *Alice* framework, the claims of the '897 Patent are directed to at least the patent-ineligible abstract idea of communicating software updates to multiple computers to change the dialog displayed in user-facing prompts. Claim 1 of the '895 Patent is representative for purposes of Section 101. For example, S3G asserted claim 1 of the '897 Patent against RSSI in the Texas Action. Ex. 1 ¶ 31. Because S3G's infringement allegations for "one or more claims of the '897 Patent" are limited to claim 1, *id.*, S3G has acceded that claim 1 is representative.

26. Representative claim 1 describes a system where an "update server machine" sends a "terminal dialogue module" and a "provider dialogue module" to a terminal machine and service provider machine, respectively. These modules modify the "code" on each machine to adapt the application for a "modified dialogue sequence." This describes nothing more than at least the abstract concept of remotely updating software on a computer, a practice courts have consistently found to constitutes an abstract idea. This is a long-standing, fundamental practice in computer

4

programming, not a patentable invention.

27. At step two of the *Alice* framework, the claims of the '897 Patent, either individually or in the ordered combination, fail to provide an "inventive concept" that transforms the abstract idea into a patent-eligible application. The claims recite nothing more than a collection of generic computer components (e.g., "update server machines," "processor," "terminal machine," "service provider machine") performing their well-understood, routine, and conventional functions. The addition of an "update server machine" is not a meaningful limitation, as the patent specification states that the service provider machine and the update server machine "may or may not be on the same physical machine," and simply limits the invention to a technical environment. The patent's own specification admits that the underlying architecture—using intermediate code (like Java Byte Code) that is distinct from computer-executable instructions to allow for platform-independent application updates—was already well-known, routine, and conventional. The claims simply take the abstract idea of updating a user interface and apply it using this conventional technology. The claims merely describe the effect or result produced—updating the dialogue—not a specific, inventive tool for how to implement it. They do not transform the nature of the abstract idea or amount to significantly more than the abstract idea. Adding such generic, well-known, routine, and conventional steps does not make an otherwise abstract idea patent eligible. This application of an abstract idea using conventional components and well-known functions of a computer system is insufficient to confer patent eligibility.

28. An actual and justiciable controversy has arisen and exists between RSSI and S3G as to the eligibility and thus enforceability of the '897 Patent. A judicial declaration that the '897 Patent is ineligible under 35 U.S.C. § 101 is necessary and appropriate to resolve this controversy and determine the respective rights and duties of the parties.

## SECOND CLAIM FOR RELIEF

**(Declaratory Judgment of Ineligibility of U.S. Patent No. 9,940,124)**

29. RSSI repeats and realleges each allegation set forth in the preceding paragraphs as fully set forth herein.

30. The '124 Patent and each of its claims are invalid for failing to claim patent-eligible

5

subject matter under 35 U.S.C. § 101 and the Supreme Court's two-part test in *Alice*.

31. At step one of the *Alice* framework, the claims of the '124 Patent are directed to at least the same abstract idea of remotely updating software to change a user interface. Claim 1 of the '124 Patent is representative for purposes of Section 101. For example, S3G asserted claim 1 of the '124 Patent against RSSI in the Texas Action. Ex. 1 ¶ 49. Because S3G's infringement allegations for "one or more claims of the '124 Patent" are limited to claim 1, *id.*, S3G has acceded that claim 1 is representative.

32. Representative claim 1 recites a method of conducting a dialogue by displaying a prompt, accepting a data entry, communicating information, and then receiving a "terminal dialogue module" that updates the application's code to display a new prompt. These steps are nothing more than a description of at least the abstract idea of changing what a user sees on a screen by sending new instructions over a network. The additional limitations for routine data collection are merely insignificant pre-solution activities that do not change the claim's abstract focus.

33. At step two of the *Alice* framework, the claims of the '124 Patent, either individually or in the ordered combination, fail to provide an "inventive concept" that transforms the abstract idea into a patent-eligible application. The additional steps of "displaying prompts," "accepting data entries," "communicating data entries from the terminal machine to the service provider machine," and "storing the data entry information in memory" merely reflect the known pre- and post-solution activity or generic data gathering steps inherent in virtually all computerized systems that perform transactions. They do not transform the nature of the abstract idea or amount to significantly more than the abstract idea. Adding such generic, well-known, routine, and conventional steps does not make an otherwise abstract idea patent eligible. The claims rely entirely on the conventional architecture of using "intermediate code" to update an application without modifying the underlying executable instructions—a technique the patent's specification confirms was well-known.

34. An actual and justiciable controversy has arisen and exists between RSSI and S3G as to the eligibility and thus enforceability of the '124 Patent. A judicial declaration that the '124 Patent is ineligible under 35 U.S.C. § 101 is necessary and appropriate to resolve this controversy.

**THIRD CLAIM FOR RELIEF**

**(Declaratory Judgment of Ineligibility of U.S. Patent No. 9,304,758)**

35. RSSI repeats and realleges each allegation set forth in the preceding paragraphs as fully set forth herein.

36. The '758 Patent and each of its claims are invalid for failing to claim patent-eligible subject matter under 35 U.S.C. § 101.

37. At step one of the *Alice* framework, the claims of the '758 Patent are directed to at least the patent-ineligible abstract idea of remotely updating user prompts displayed on a device. Claim 1 of the '758 Patent is representative for purposes of Section 101. For example, S3G asserted claim 1 of the '758 Patent against RSSI in the Texas Action. Ex. 1 ¶ 68. Because S3G's infringement allegations for "one or more claims of the '758 Patent" are limited to claim 1, *id.*, S3G has acceded that claim 1 is representative.

38. Representative claim 1 recites at least the abstract idea of: (1) displaying a first prompt; (2) receiving a user input; (3) sending that information to a server; and (4) receiving instructions to display a new prompt. This is not a specific improvement to computer functionality but rather the generic data gathering or otherwise using a computer to implement a long-standing practice.

39. At step two of the *Alice* framework, the claims, either individually or in the ordered combination, fail to provide an "inventive concept" that transforms the abstract idea into a patent-eligible application. The claims recite nothing more than conventional computer activities. The central limitation—updating an application by replacing a portion of its "Java Byte code" (the "first code") without modifying the underlying "computer-executable instructions"—describes the basic, non-inventive way conventional Java-based platforms are designed to function. The patent's specification acknowledges that using virtual machines and intermediate code like Java Byte Code was well-known, routine, and conventional. The claims do not transform the nature of the abstract idea or amount to significantly more than the abstract idea. Adding such generic, well-known, routine, and conventional steps does not make an otherwise abstract idea patent eligible. By simply applying an abstract idea to this conventional architecture, the patent attempts to monopolize a

7

fundamental building block of software development, particularly for any Java-based mobile application.

40.  An actual and justiciable controversy has arisen and exists between RSSI and S3G as to the eligibility and thus enforceability of the '758 Patent. A judicial declaration that the '758 Patent is ineligible under 35 U.S.C. § 101 is necessary and appropriate to resolve this controversy.

**PRAYER FOR RELIEF**

RSSI respectfully requests that this Court enter judgment against S3G as follows:

A.  A declaration that the claims of the Declaratory Judgment Patents are ineligible under 35 U.S.C. § 101;

B.  For attorney's fees and costs;

C.  Such other and further relief as this Court or a jury may deem just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38 and Civil Local Rule 3-6(a), RSSI herby respectfully demands a jury trial on all issues triable by jury.

| | | |
|---|---|---|
| 1 | Dated: September 11, 2025 | **BAKER BOTTS L.L.P.** |
| 2 | | */s/ Jeremy J. Taylor* |
| | | Jeremy J. Taylor (SBN 249075) |
| 3 | | jeremy.taylor@bakerbotts.com |
| | | 101 California Street, Suite 3200 |
| 4 | | San Francisco, CA 94111 |
| | | (415) 291-6200 |

Kurt Pankratz (*Pro Hac Vice Forthcoming*)
kurt.pankratz@bakerbotts.com
2001 Ross Avenue, Suite 900
Dallas, TX 75201
(214) 953-6500

Lauren J. Dreyer (*Pro Hac Vice Forthcoming*)
lauren.dreyer@bakerbotts.com
700 K Street, N.W.
Washington, DC 20001
(202) 639-7700

*Attorneys for Plaintiff Retail Services & Systems, Inc.*

9